# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-129-RJC

| | |
|---|---|
| **MEINEKE CAR CARE CENTERS, LLC** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **ASAR INCORPORATED, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** comes before the Court on Plaintiff Meineke Car Care Centers, LLC's (Meineke) Motion for Default Judgment, (Doc. 14), and Memorandum in Support. (Doc. 14-1). The matter is ripe for review.

## I. BACKGROUND

### A. Procedural Background

On March 24, 2014, Meineke filed suit against Defendants ASAR Incorporated, LLC (ASAR), a Nevada limited liability company, and Ralph and Ashvinder Ahmad (collectively: Defendants), officers and shareholders of ASAR, who personally guaranteed the obligations of ASAR under its Franchise Agreement. (Doc. 1: Complaint). ASAR was served with the Summons and Complaint on April 7, 2014, (Doc. 6), and had until April 28, 2014 to respond. FED. R. CIV. P. 12(a)(1)(A)(i). ASAR failed to respond within this time. Meineke moved for entry of default on May 23, 2014, (Doc. 7), and the clerk entered default against ASAR on May 29, 2014. (Doc. 8). Likewise, Ralph and Ashvinder Ahmad were served with the Summons and Complaint on May 17, 2014, (Docs. 9, 10), and had until June 9, 2014 to respond. FED. R. CIV. P. 12(a)(1)(A)(i). They failed to respond within this time. Meineke moved for entry of default

on June 11, 2014, (Doc. 12), and the clerk entered default against them on June 12, 2014. (Doc. 13). Meineke has now moved for default judgment as to Defendants. (Doc. 14).

B. Factual Background

This motion arises out of Defendants' failure to report sales and pay royalties and advertising contributions to Meineke, in addition to their failure to abide by the post-termination obligations contained in their Franchise Agreement with Meineke. On June 1, 2009, Defendants entered into a Meineke Franchise and Trademark Agreement ("Franchise Agreement") with Meineke, which granted them the right to operate a Meineke Center located at 3744 Highway 50 East, Carson City, Nevada, 89706. (Compl. ¶ 19; see also Docs. 14-3, 14-4). Under the Franchise Agreement, Meineke authorized Defendants to operate an auto repair center under the trade name "Meineke"; display the Meineke name, logo, and marks; receive training and access to Meineke's methods, procedures and techniques; and participate in an established network of licensed auto repair centers. (Compl. ¶ 20). Defendants also agreed to pay to Meineke weekly franchise and advertising fees and to furnish it with accurate weekly business reports of gross revenue. (Compl. ¶ 21).

During the term of the Franchise Agreement, Defendants breached their obligations by failing to submit weekly business reports and by failing to pay franchise and advertising fees. (Compl. ¶ 23). On January 23, 2013, Meineke sent Defendants a Notice of Default and informed them that if they did not cure the defaults within thirty days, Meineke could terminate their franchise license and seek reasonable costs and expenses owed under the Franchise Agreement. (Compl. ¶ 24). Defendants failed to cure the defaults, and Meineke terminated their license effective March 29, 2013. (Compl. ¶ 25). Meineke attempted to resolve the dispute, but could not reach a resolution with Defendants. (Compl. ¶ 26). On September 26, 2013, Meineke sent

Defendants an additional Notice of Termination, reiterating the grounds of termination and the demands contained in the March 28, 2013 Notice. (Compl. ¶ 26).

The Franchise Agreement contained a series of post-termination obligations, including obligations: (1) to pay Meineke "all royalties, MAF payments, amounts owed for purchases from [Meineke] or [its] Affiliates, interest due on any of the foregoing and all other amounts owed . . ."; (2) to "not directly or indirectly at any time or in any manner use any Mark . . . or any other indicia of a Meineke Center"; (3) to "notify the telephone company . . . of the termination or expiration of any rights [they] may have to use any telephone number . . . associated with any Mark . . . and to authorize transfer of the number to [Meineke] . . ."; and (4) "if [Meineke] do[es] not exercise [its] right to take possession of the Premises . . ." to "promptly remove from the Premises, and discontinue using for any purpose, all signs, fixtures, posters, decor items, advertising materials, forms and other materials and supplies which display any of the Marks . . . associated with Meineke. . . ." (Doc. 14-4, Franchise Agreement ¶¶ 15.1-2).

The Franchise Agreement also contained a non-compete clause that prohibited Defendants, for a period of one year after termination of their franchise license, from "directly or indirectly . . . own[ing] a legal or beneficial interest in, manag[ing], operat[ing] or consult[ing] with:" (a) any competitive business operating at the premises of Defendants' former Meineke Center; (b) any competitive business operating within a six-mile radius of the noted premises; and (c) any competitive business operating within a six-mile radius of any Meineke Center in operation on the effective date of termination. (Doc. 14-3, Franchise Agreement ¶ 11.4).

Notwithstanding the Notice, Defendants continue to operate a competing business from the premises of the former Meineke Center, (Compl. ¶¶ 27, 32-3), continue to utilize telephone

numbers that have been advertised extensively in conjunction with the Meineke name,[1] and continue to display Meineke's protected Marks on or about the premises. (Compl. ¶¶ 32-3). Meineke filed a complaint and this motion requesting that the Court: (1) enter a Permanent Injunction enjoining Defendants' continued use of Meineke's trademark and associated telephone numbers; (2) enjoin Defendants' breach of the Franchise Agreement's Covenant Not to Compete; (3) award Meineke its owed franchise fees and advertising contributions under the Franchise Agreement and during Defendants' continued breach of the Franchise Agreement; and (4) award Meineke costs and expenses, including reasonable attorney's fees.

## II. STANDARD OF REVIEW

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure, which provide in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); see also FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a "'defendant is not held to admit facts that

---

[1] Defendants continue to utilize Meineke telephone numbers. (Compl. ¶ 32).

are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed.) ("[L]iability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Ryan, 253 F.3d at 780-81. The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. Lawbaugh, 359 F. Supp. 2d at 422. While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted).

### III. ANALYSIS

#### A. Permanent Injunction for Trademark Infringement

Meineke "can establish trademark infringement by showing (1) that it owns a trademark and (2) that the infringer used the mark without authorization in commerce and in a manner likely to create consumer confusion." See 15 U.S.C. § 1114(1)(a); Petro Stopping Ctrs., L.P. v.

5

James River Petroleum, Inc., 130 F.3d 88, 91 (4th Cir. 1997). Meineke has established both elements. Its certificates of registration of its marks upon the principal register is prima facie evidence of Meineke's ownership of the marks and of Meineke's exclusive right to use the registered marks in commerce. See 15 U.S.C. § 1057(b). Meineke has shown that Defendants continued to use the registered marks in commerce even after Meineke terminated their Franchise Agreement. "Continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test. . . ." Burger King Corp. v. Mason, 710 F.2d 1480, 1493 (11th Cir. 1983) (internal citations omitted).

The Lanham Act vests district courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to . . . prevent a violation under [§ 1125(a)]." 15 U.S.C. § 1116(a). The party seeking the injunction must demonstrate that "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 126 (4th Cir. 2011) (citing eBay, Inc. v. MercExchange, 547 U.S. 388, 391 (2006)).

The Court finds that Meineke has suffered irreparable injury. In Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002), the Fourth Circuit noted that "[i]n Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion. . . ."[2] (citations omitted). Here, Defendants are offering the same services they offered when they were authorized Meineke

---

[2] The Fourth Circuit also noted that it "has never spoken directly to the applicability of such a presumption of harm in Lanham Act cases." Scotts Co. v. United Industries Corp., 315 F.3d 264, 273 (4th Cir. 2002).

franchisees from the same location using Meineke marks and telephone numbers.³ Accordingly, Meineke has suffered damage to its goodwill and reputation and has lost sales to consumers who have been deceived and confused into purchasing products and services from Defendants that the consumers believe are from Meineke.

Second, remedies available at law are inadequate. "Irreparable injury necessary for injunctive relief regularly follows from trademark infringement. Otherwise, the denial of an injunction forces the plaintiff to suffer continued infringement and to bring successive suits for monetary damages." Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc., 87 F.Supp.2d 567, 587 (E.D. Va. 2000) (citations omitted). Thus, Meineke has satisfied the second element needed to obtain a permanent injunction.

Third, the balance of hardships favors Meineke because Meineke will continue to suffer irreparable harm if the Court does not enjoin Defendants' continued breach of the Franchise Agreement; whereas, Defendants will suffer very little—only being held to the terms of the Franchise Agreement. Defendants in the instant case will be harmed by the loss of their franchise, but "[their] self-inflicted harm is far outweighed by the immeasurable damage done [Meineke] by the infringement of its trademark" and use of its telephone numbers. S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 379 (3rd Cir. 1992).

Fourth, granting the permanent injunction serves the public interest because the consuming public could be deceived and confused by Defendants' unauthorized use of the Meineke name, marks, and telephone numbers. In S & R Corp., 968 F.2d at 379, the Court held that, "[w]here a likelihood of confusion arises out of the concurrent use of a trademark, the

---

³ "[W]here a former franchisee continues to use telephone numbers it used as franchisee and agreed to relinquish or transfer upon termination, the franchisee is not only in breach of the franchise contract but also poses a serious threat of irreparable injury." MarbleLife, Inc. v. Stone Resources, Inc., 759 F.Supp. 2d 552, 562 (E.D. Pa. 2010) (citation omitted).

7

infringer's use damages the public interest . . . much like irreparable injury to the trademark owner . . . [and] [i]njunctive relief [is] in the public's interest." (citation omitted). Since Defendants' use of Meineke's trademark and telephone numbers is likely to confuse the public, it is in the public interest to enjoin Defendants' unlawful conduct.

Therefore, Meineke has established the four elements needed to obtain a permanent injunction on its trademark infringement claim. Accordingly, the Court **grants** Meineke's motion as to this claim.

B.   Enforcement of Covenant Not to Compete

The parties, both receiving valuable consideration, agreed to a covenant not to compete in Article 11.4 of the Franchise Agreement. Under North Carolina law, a covenant not to compete in a franchise agreement is valid and enforceable if the covenant is (1) reasonable as to the duration and geographic scope of the restriction and (2) the restriction is otherwise necessary to protect the legitimate interests of the franchisor. Outdoor Lighting Perspectives Franchising, Inc. v. Harders, 747 S.E.2d 256, 264 (N.C. App. 2013). "The reasonableness of a non-competition covenant is a matter of law for the court to decide." Beasley v. Banks, 368 S.E.2d 885, 886 (N.C. App. 1988) (citation omitted). "The party who seeks enforcement of the covenant not to compete has the burden of proving that the covenant is reasonable." Hartman v. W.H. Odell and Assocs., 450 S.E.2d 912, 916 (N.C. App. 1994) (citations omitted).

The Franchise Agreement precludes Defendants, for a period of one year after termination of their franchise license, from directly or indirectly owning a legal or beneficial interest in managing, operating, or consulting with the following: (a) any competitive business operating at the premises of Defendants' former Meineke Center; (b) any competitive business operating within a six-mile radius of the noted premises; and (c) any competitive business

operating within a six-mile radius of any Meineke Center in operation on the effective date of termination.

The covenant is reasonable in duration and geographic scope. The duration is reasonable because North Carolina courts have upheld periods in excess of one year under similar circumstances. See, e.g., Keith v. Day, 343 S.E.2d 562, 567-68 (N.C. App. 1986) (two-year covenant reasonable); Triangle Leasing Co., Inc. v. McMahon, 393 S.E.2d 854, 858 (N.C. 1990) (two-year time restriction not improper). The territory of a six-mile radius has also been held reasonable in similar circumstances under North Carolina law. See, e.g., Id. (greater Raleigh area was reasonable); Forrest Paschal Mach. Co. v. Milholen, 220 S.E.2d 190, 196-97 (N.C. Ct. App. 1975) (350-mile territorial restriction enforced). Additionally, the provision prohibiting Defendants from operating any competitive business within a six-mile radius of any other Meineke franchise is also reasonable. See Meineke Car Care Centers, Inc. v. Bica, No. 3:11-cv-369, 2011 WL 4829420 (W.D.N.C. Oct. 12, 2011); Meineke Car Care Centers, Inc. v. Glover, No. 3:10-cv-667, 2011 WL 240462 (W.D.N.C. Jan. 21, 2011); Harwell Enter., Inc. v. Heim, 173 S.E.2d 316, 320 (N.C. 1970) (North Carolina Supreme Court found that business engaged in nationwide activities reasonably needed nationwide protection). Furthermore, the covenant protects legitimate interests of Meineke, including protecting confidential business information and maintaining goodwill among its customers and other franchisees.

Meineke has succeeded on the merits, as the Court has deemed default judgment appropriate on the merits as a matter of law. As noted above, enjoining Defendants continued breach of the Franchise Agreement is necessary to protect the legitimate business interests of Meineke and prevent further injury, such interests outweighing the self-wrought consequences to Defendants. Finally, granting a permanent injunction is in the public interest because the public

could be confused by the Defendants' unauthorized use of the Meineke name and marks and because, otherwise, Defendant would continue to unfairly compete with other authorized Meineke franchises. See, e.g., Outdoor Lighting, 747 S.E.2d 256 at 259 n.1.

In light of the foregoing, the Court **grants** Meineke's motion for permanent injunction as to this claim.

C. Franchise Fees and Advertising Contributions

Meineke seeks $31,373.56 in compensatory damages for unpaid royalties and advertising fees owed under the terms of the Franchise Agreement. (See Complaint ¶¶ 21-23; Doc 14-2: Affidavit of Edward Moore ¶ 16; Doc. 14-8: Consolidated Statement of Account). "For a breach of contract the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." Perfecting Serv. Co. v. Prod. Dev. & Sales Co., 259 N.C. 400, 415 (N.C. 1963). Accordingly, the Court **grants** Plaintiff request for $31,373.56 in damages for unpaid royalties and advertising fees under the Franchise Agreement.

D. Costs, Expenses, and Reasonable Attorney's Fees

Meineke also seeks to recover the costs and attorney's fees incurred throughout this proceeding. Article 17.6 of the Franchise Agreement provides: "[t]he party who prevails in any arbitration or judicial proceeding will be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees." Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Since Meineke is the prevailing party in this action, it is entitled to recover the costs and expenses incurred in this case. As to attorney's fees, "[t]he general rule in this State is that, in the absence

of statutory authority therefor, a court may not include an allowance of attorneys' fees as part of the costs recoverable by the successful party to an action or proceeding." Hicks v. Albertson, 200 S.E.2d 40, 42 (N.C. 1973). N.C. Gen. Stat. § 6-21.6(c) (2011) provides:

> If a business contract governed by the laws of this State contains a reciprocal attorneys' fees provision, the court or arbitrator in any suit, action, proceeding, or arbitration involving the business contract *may* [after considering all relevant facts and circumstances] award reasonable attorneys' fees in accordance with the terms of the business contract.

(emphasis added). After considering all relevant facts and circumstances, the Court **denies** Plaintiff's request for attorney's fees.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants ASAR INCORPORATED, Ralph Ahmad and Ashvinder Ahmad and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, must permanently:

(a) Cease and refrain from, for a period of one year from the date of compliance with this Order, directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with: (i) any business operating at the premises of former Center No. 1262 located at 3744 Highwy 50 East, Carson City, NV 89706 or within a radius of six miles of the premises of former Center No. 1262 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (ii) any business operating within a radius of six miles of any Meineke Center existing as of September 26, 2013, the date Defendants' Franchise Agreement terminated, which

11

business repairs or replaces exhaust system components, brake system components, or shocks and struts.

(b) Immediately cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo or mark confusingly similar to the Meineke name, logo, marks or trade dress, including, but not limited to any black and yellow signage on or near Center No. 1262 at 3744 Highway 50 East, Carson City, NV.

(c) Immediately cease making any representation or statement that Defendants or the business located at 3744 Highway 50 East, Carson City, NV 89706 is in any way approved, endorsed, or licensed by Meineke, or is associated with Meineke in any way.

(d) Immediately do everything required by the telephone company, including but not limited to, signing all required paperwork and paying any amount due, to release or transfer to Meineke the telephone numbers 775-882-7800, 775-883-4873, 775-461-2618 and 775-461-2329 being used by Defendants' business located at 3744 Highway 50 East, Carson City, NV 89706 or which have been advertised in conjunction with Meineke's Marks.

(e) Immediately return to Meineke any and all operations manuals in Defendants possession or control.

2. That judgment shall be entered in favor of Plaintiff Meineke and against Defendants ASAR Incorporated, Ralph Ahmad and Ashvinder Ahmad, jointly and severally, in

the amount of $31,373.56 for unpaid fees due and owing to Meineke under the terms of the Franchise Agreement between the parties.

3. That Defendants ASAR Incorporated, Ralph Ahmad and Ashvinder Ahmad, jointly and severally, are adjudged liable for all of Meineke's costs and expenses incurred in this action pursuant to Article 17.6 of the Franchise Agreement. Meineke is directed to file an Affidavit of its costs and expenses incurred within 18 days of this Order, and the Court will enter a Supplemental Judgment.

4. The Court denies Plaintiff's request for attorney's fees.

Signed: August 13, 2014

Robert J. Conrad, Jr.
United States District Judge